UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

| | |
|---|---|
| MILLENNIUM ACCESS CONTROL | : |
| TECHNOLOGY, INC., | : |
| *Plaintiff* | : |
| | : |
| v. | : |
| | : |
| ON THE GATE, LLC, DAVID | : |
| REISENDER, JOHN DOES 1 TO 10, | : |
| INDIVIDUALS, ABC COMPANY | : |
| AND XYZ COMPANY, BUSINESS | : |
| ENTITIES OF UNKNOWN FORMS, | : |
| | : |
| *Defendants* | : |

**Civ No. 15-cv-6067**

-------------------------------------------------------------X

**COMPLAINT FOR FALSE ADVERTISING UNDER THE LANHAM
ACT, § 43(a), 15 U.S.C. § 1125(a), FOR UNFAIR AND DECPTIVE
TRADE PRACTICES AND FALSE ADVERTISING UNDER THE NEW
YORK GENERAL BUSINESS LAW, §§ 349 AND 350; AND FOR
BREACH OF CONTRACT**

Plaintiff, Millennium Access Control Technology, Inc. ("Plaintiff", or "Millennium

Access Control"), as and for its Complaint against the Defendants, On the Gate, LLC ("On the

Gate"), David Reisender ("Reisender") John Does 1 to 10, ABC Company and XYZ Company

(collectively "Defendants"), alleges as follows:

**PARTIES**

1.      Plaintiff, Millennium Access Control, is a corporation formed and existing under

the laws of New York, which maintains its principal office at 16 Jordan Court, Huntington, NY,

11746.

2.     Millennium Access Control is in the business of manufacturing, assembling, distributing and selling its Patented Access Control Systems ("PACS") (herein referred to as the "Product(s)") nationally and internationally, directly and through sales representatives.

3.     Millennium Access Control has been registered and has been awarded and is the owner of United States Letters Patents in respect of the PACS as follows:  U.S. Patent Nos. 6598546, 6302325, and 817481, and, more recently, 9016558 (collectively, the "Patents"). Three of the Patents were issued prior to the date and time when Plaintiff and Defendants commenced any business relationship (copies of which are annexed hereto as Exhibit "A"); and the fourth Patent was issued in or about April 28, 2015 (a copy of which is annexed hereto as Exhibit "B").

4.     Generally, as excerpted from the Patent filing and issuance documents (see Exhibits "A" and "B"), the Patents relate to "[a]n access opening and closure device for enabling the passage of food or medication, and other items, into a confined spaced without providing direct access from within the confined space to outside of the confined space. The device includes a housing defining a receptacle, an access door and a top cover. The top cover and the access door are independently movable between open and closed positions to provide access to within the receptacle."

5.     The PACS were primarily, but not exclusively designed for sale and use in jails, prisons, detention centers, hospitals, lock-ups, mental institutions, clinics, police facilities, correction facilities and other similarly industries, facilities and institutions.

6.     Upon information and belief, Defendant, On The Gate is a New York Limited Liability Company, which maintains its principal place of business at 104 Weiner Road, Ellenville, New York 112428.

7.     Upon information and belief, the sole managing member of On The Gate is Reisender.

8.     Upon information and belief, prior to the date and time that Plaintiff and Defendants commenced contractual business relationship, Defendant, On The Gate, was not, and/or was not permitted to be or act as a manufacturer or assembler of any products similar to the PACS; and rather was retained/appointed to operate solely as a sales representative for the PACS.

9.     Upon information and belief, Defendant, Reisender is an individual, whose principle residence is located at 104 Weiner Road, Ellenville, New York 112428.

10.     Defendants, various John Does 1-10, individuals, and ABC Company and XYZ Company, business entities of unknown form and origin, are sued herein under fictitious names, because their true names and capacities are unknown at this time. This complaint will be amended when their true names and capacities are ascertained.

## JURISDICTION AND VENUE

11.     This Court has federal question jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1221 and 28 U.S.C. §§ 1331 and 1338(a), (b), because this action arises under the Federal Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq*. (the "Lanham Act").

12.     Although this action also asserts state law claims, this Court has supplemental subject matter jurisdiction to determine those claims, pursuant to 28 U.S.C. §1367(a).

13.     Venue in this district is proper under 28 U.S.C. § 1391(b) and (c) because Plaintiff's principal office is located there, and Defendants regularly transact and/or solicit business in this District, and is therefore subject to personal jurisdiction in this District.

3

**NATURE OF THE ACTION**

14.    This is an action for: (i) false and misleading advertising actionable under the Lanham Act, § 43(a), 15 U.S.C. § 1125(a); (ii) for unfair and deceptive trade practices and false advertising under the New York General Business Law, §§ 349 and 350; and (iii) for breach and default of and/or under numerous contract provisions contained in the "Sales Representative Agreement" between Plaintiff and Defendants. (See copy annexed as Exhibit "C" hereto).

15.    It is alleged that as to all claims hereunder (except perhaps as to the breach of contract claims), at various times herein Defendant, Reisender, acted both in his individual and corporate capacity on behalf of On The Gate, in making and issuing intentionally and knowingly false statements, many of which were made in interstate commerce.

16.    Defendants, On The Gate and Reisender, were exclusively engaged as sales representatives for Millennium Access Control; and, pursuant to the Sales Representative Agreement they were not permitted to engage in the manufacture, assembly, including by third-party contract manufacture, of products which competed with Plaintiff's Products, including because the Products are protected by and the subject of Plaintiff's four patents. (See, Exhibits "A" and "B").

17.    Although Defendants represented and covenanted not to do anything to violate or impair any of Plaintiff's trademarks, tradenames or other intellectual property, upon taking up their activities under the Sales Representative Agreement, upon information and belief, Defendants violated and transgressed those proscriptions; and said Defendants have been falsely advertising and promoting the PACS by the dissemination of sales brochures in interstate commerce, and by use and facilities of a website established on the Internet, in a manner and way so as to falsely represent the following, among other, things:  (i) that the "Patented Access

4

Control System" was created by the industry, knowledge and insight of Defendants, without any attribution or credit to Plaintiff as the owner and source of origin; and (ii) that the PACS are the products of Defendants, rather than those of Millennium Access Control.

18.     To accomplish this false and deceitful purpose, among other things, said Defendants, individually and collectively, including, upon information and belief, as aided by one or more third parties, made the following, among other, knowing and willfully false statements in interstate commerce: (i) "On The Gate is a company dedicated to advancing new technology in the field of penology"; (ii) "our team's vast knowledge and insight in the daily operations of the jail and prison industry has led to the development of the innovative "Patented Access Control System".

19.     In addition, Defendants disseminated pictures and videos of Plaintiff's PACS, including by the use of Defendants' website, and in sales brochures, demonstrating and depicting the use and operation of the PACS, and promoted and advertised the PACS in a manner and way so as to infringe on and transgress Plaintiff's trademarks and tradenames for Plaintiff's Products-
-including by representing a false derivation of origin, and by creating confusion in the market place, so that "consumers" (consisting of and comprised by Jails, Prisons, Detention Centers, Hospitals, Lock-Ups, Mental Institutions, Clinics, Police Facilities, Correction Facilities and other industries, facilities and institutions implementing incarceration), were led to believe, or likely believed, that the PACS was created by Defendants, and not by Plaintiff.

20.     In short, it is alleged herein that Plaintiff's marks "Millennium Access Control System", "Patented Access Control System", and/or "Access Control System", and variations thereof, are inherently distinctive in that they identify a particular and singular source of

origination (i.e., Millennium Access Control); including because the PACS are protected by four Patents issued to Plaintiff.

## FACTS COMMON TO ALL CLAIMS

### Terms And Provisions Of The Sales Representative Agreement.

21.     Plaintiff and Defendant, On The Gate entered into the Sales Representative Agreement, made and effective as of February 25, 2011 (the "Sales Representative Agreement" or the "Agreement").  (See, Exhibit "C")

22.     Pursuant to the Sales Representative Agreement, On The Gate (sometimes hereinafter alternatively referred to as the "Representative") was appointed as the independent exclusive sales representative for the promotion, marketing and sale of the PACS (sometimes hereinafter referred to as the "Products") for the entire United States of America, excluding the "New York City area and the State of Pennsylvania" (the "Exclusive Territory"); and as the independent, non-exclusive sales representative for the marketing and sale of the Products in the "New York City area", and for the State of Pennsylvania (the "Non-Exclusive Territory"). (See, ¶"4")[1]

23.     Exhibit "A" to the Sales Representative Agreement (annexed as Exhibit "C" hereto) defined and set out the "Products" to be marketed and sold by On The Gate.  (The description of the Products are coterminous with the Patents; see Exhibit "A"); provided that these Product descriptions were supplemented by the issuance of an additional Patent after the date of the Agreement, on or about April 28, 2015.  (See, Exhibit "B" hereto)

---

[1] All paragraph (¶) references refer to the designated paragraphs of Sales Representative Agreement.

24.     As a result of the foregoing provisions defining Exclusive and Non-Exclusive Territory, it was clear that Plaintiff and On The Gate would be, and were competitors for the sale of the Products at least as to the Non-Exclusive Territory.

25.     It was the express purpose of the Sales Representative Agreement that On The Gate was to market, promote and sell the Products. (See, ¶"1")

26.     ¶"2" defined and set out the parties' agreement regarding the use of Plaintiff's "Confidential Information; inclusive of the restrictions on that use which required that such materials be used for the benefit of Plaintiff, and to promote the sale of Plaintiff's Products.

27.     In pursuance of this provision, among other things, Plaintiff delivered to the Representative copies of the Millennium's Sales Brochure (a copy of which is annexed as Exhibit "D"), boldly captioned: "Millennium Access Control System".

28.     "Millennium Access Control System", "Access Control System" and "Patented Access Control System" and variations thereof, were trademarks and tradenames regularly and widely used in interstate commerce over more than the past fifteen (15) years to depict the Products of Millennium Access Control.

29.     Plaintiff's Trademarks, although not registered are unique and distinctive and refer to Plaintiff's Patented Access Control System, thereby designating Millennium Access Control as the single source of origin for the PACS, which Products are otherwise protected from copying or duplication by the four (4) Patents relating to the PACS.

30.     ¶"3" set out the nature and limitations of the parties relationship, making it clear that the  "Agreement shall not be construed as creating a joint venture, partnership, agency, employer/employee, or similar relationship between the Parties, or as authorizing either Party to act as the agent of the other". [Emphasis added]

7

31.     ¶"4" reiterated the requirement that during the Term of the Agreement "the Representative shall use its 'best efforts' so sell the Products" in the Exclusive and Non-Exclusive Territories.

32.     ¶"5" defined and characterized the potential customers for the sale of Plaintiff's Products, which included, but was not limited to: "All Jails, Prisons, Detention Centers, Hospitals, Lock-Ups, Mental Institutions, Clinics, Police Facilities, Correction Facilities and all other industries, facilities and institutions."

33.     ¶"7" made it clear that Representative's "sole compensation", apart from installation charges for authorized installations made by On The Gate, was to be derived to the extent that the sales price charged by the Representative to its customers was greater than the price Representative paid to Plaintiff for the purchase of each unit of the Product--so that the mark-up in the sales price that the Representative might realize from the sale of the Products to its customers was its sole compensation, apart from authorized and proper installation charges; provided that Representative was solely responsible for its own expenses, including "the payment of all income, social security, employment-related, or other taxes incurred as a result of the compensation the Representative earned under [the] Agreement".

34.     ¶"8" delineated "Representative's Responsibilities, which included, among other things, the obligation to:

    (a)     devote such time, energy, and skill on a regular and consistent basis as is necessary to sell and promote the sale of the Company's[2] Products in the Territory during the Term of this Agreement;

    (b)     be responsible to finalizing agreements and purchase orders with each customer that purchases the Products;

---

[2] In each case and for purposes of this paragraph, "Company" or Company's means and refers to Plaintiff.

8

(c)    accurately represent and state the Company's production abilities, policies and capabilities to all potential and present customers;

(d)    promptly inform the Company of all sales and orders and expected time frames for delivery of Company Product resulting from such sales and orders;

(e)    inform the Company if the Representative intends to advertise the Products outside of the Territory or solicit sales from customers located outside of the Territory;

(f)    maintain contact with the Company via telephone, e-mail, or other agreed on means of communication with reasonable frequency to discuss sales activity within the Territory;

(g)    disclose any problems concerning customers (including Existing Customers) to the Company;

(h)    perform such other sales-related services with respect to the customers as the Company or Representative may reasonably require; and

(i)    endeavor to sell <u>no</u> <u>less</u> <u>than</u> <u>200</u> <u>units</u> <u>per</u> <u>year</u> with the beginning of the first selling year starting no earlier than May 2012. [Emphasis added]

35.    ¶"9" prohibited the Representative from selling any products that in the judgment of Plaintiff competed with the Products; and required that the Representative to notify Plaintiff <u>in</u> <u>writing</u> of any companies it currently represented, or might come to represent.

36.    Pursuant to ¶"10", Plaintiff represented, warranted and agreed to the follow, among other things:

(a)    that it will provide Representative with current information as to improvements, upgrades, or other changes in the Products; and

(b)    that it will warranty the Product against manufactures defects, and workmanship for a minimum or 2 years.

37.    ¶"11" set the Term of the Agreement as twelve (12) years, unless sooner or otherwise terminated.

38.     ¶"12" set forth the grounds for "Termination" by the parties; and expressly provided that Plaintiff was entitled to terminate the Agreement if Representative failed "to sell 200 units or more in a 365 day time period, beginning on January 1, 2013, during the Term" (the "Minimum Sales Requirement)--which Minimum Sale Requirement was subject to the supervening obligation that Representative was required to use its "Best Efforts" to accomplish that Minimum Sales Requirement. Termination was also authorized upon a breach of Section "2" of the Agreement.

39.     Among other things, ¶"13" required the Representative to return all samples, models, documents and things, retaining no copies, within 60 days of any Termination of the Agreement.

40.     By ¶"15", among other things, the Representative recognized Plaintiff's:

right, title, and interest in and to all service marks, trademarks, and trade names used by the Company; and agree[d] not to engage in any activities or commit any acts, directly or indirectly, that may contest, dispute, or otherwise impair the Company's right, title, and interest therein, nor shall the Representative cause diminishment of value of said trademarks or trade names through any act or representation.

41.     ¶"18" provided that there was no implied waiver, and that the failure "to insist on strict performance of any covenant or obligation under [the] Agreement, regardless of the length of time for which such failure continues, shall not be deemed a waiver...."

## DEFENDANT'S UNLAWFUL CONDUCT

42.     As amplified below, the essential premise of this Complaint is that Plaintiff's marks "Millennium Access Control System", "Patented Access Control System" and "Access Control System", and variations thereof, are inherently distinctive as they identify Plaintiff as the particular and sole source of origination of the PACS; including because the PACS are

separately protected by four Patents, and such Trademark terms are incorporated in Plaintiff's corporate name.

43.     On information and belief, in both its sales brochures and on its Internet Website: http://www.onthegate.net, Defendants copied and utilized pictures and diagrams of the PACS as were obtained from Plaintiff, and/or derived from materials Plaintiff provided to Defendants, including the "Confidential Information"; and Defendants have used and disseminated those pictures, diagrams and videos in interstate commerce, with full knowledge and appreciation for the fact that such advertising and promotion willfully and without the authority or the consent of Plaintiff, depicted, promoted and marketed the PACS as having been created by and as a Product developed and owned by Defendants.

44.     Upon information and belief, annexed as Exhibit "E" is a copy of a sales brochure widely disseminated by Defendants in interstate commerce.

45.     As plainly appears from Exhibit "E", Defendants make the claim that: "On-The-Gate is a company dedicated to advancing new technology in the field of penology".

46.     Upon information and belief, the forgoing statement is willfully false, or made with such a gross disregard for the truth of the statement made as to be the equivalent of a willful prevarication; in that, upon information and belief, neither of said Defendants have any facilities or capabilities for the creating new technologies leading to the advancement of penology.

47.     Exhibit "E" also asserts the following: "We [Defendants] stand behind the quality of our products with a lifetime manufacturer's defect warranty and our unlimited 24 hour technical support and service support."

48.     Since it is immutable that Millennium Access Control is the manufacturer, not Defendants, this statement was intentionally and knowingly false, in that each of Defendants, On

The Gate and Reisender, were fully aware and knew that, as provided in the Sales Representative Agreement, Plaintiff only agreed to a Two Year Guarantee; and upon information and belief, Defendants did not have either the financial resources, or any other capability to make good on such a "lifetime guarantee"--thereby implicating the fact that the original source of the manufacture of the Produce was representing a "lifetime guarantee"—which was not true.

49.    Annexed as Exhibit "F" is a printout from the drop down menu feature by the On The Gate website, accessed by clicking on the "About Us" button at such website.  This printout constitutes a further false promotion for the Products widely disseminated by Defendants in interstate commerce.

50.    Exhibit "F" contains the following willfully and knowingly false statement: "our team's vast knowledge and insight in the daily operations of the jail and prison industry has led to the development of the innovative 'Patented Access Control System' (PACS)."

51.    This same false and misleading statement prominently appears in Exhibit "E".

52.    In fact, Defendants had nothing to do with the development of the PACS; as it was developed and patented long before Plaintiff, and its representatives, ever met and/or retained Defendant, On The Gate to be its Sales Representative.

53.    These false advertisements and promotions are indicia of additional instances that Defendants are and have been engaged in continuing pronouncements and promotions disseminated through instrumentalities in interstate commerce, pursuant to which Defendants have been and continue to be willfully, intentionally and falsely attempting to confuse consumers for the PACS; including by implicating and willfully ascribing a false derivation and source of origin, which necessarily has had and will continue to have the effect of diminishing and impairing Plaintiff's Trademarks and Tradename for the Patented Access Control System.

12

54.     Exhibit "G" annexed hereto is also a printout derived from the pull-down menu comprising a part and mechanism of Defendant's Internet website.  Exhibit "G" encompasses a picture of the PACS, extracted from a video created by MSNBC, as indicted in Exhibit "G", relating to a news report regarding problems with prisoner's assaulting guards at the Riker's Island prison.

55.     Exhibit "G" is a direct and immutable example of Defendants' false designation of origin, willfully intended to confuse the customers for the PACS into believing that the Product was created by Defendants and not Plaintiff.

56.     This unavoidably appears from the fact that Exhibit "G" features a picture of Plaintiff's "access opening closure device for the enabling of passage of food or medication into a confined spaced without providing direct access within the space to outside of the confined space, widely known as the "Patented Access Control System".

57.     Graphically, and unequivocally, at the bottom of the page of that print out, under the bold caption: "Patented Access Control System" there plainly appears the following audacious and willfully false statement: "On-The-Gate created this Patented Access Control System…."

58.     From these and other materials used and disseminated in interstate commerce by Defendants, and upon information and belief, from personal misstatements and misrepresentations made by Reisender to various persons associated with existing and potential customers of Plaintiff, Defendants have willfully, openly, knowingly and falsely asserted that the PACS and the Trademarks and tradenames "Access Control System", "Patented Access Control System" and/or "Millennium Access Control System", belong to Defendant. Defendants thereby, among other things, have intentionally and willfully diluted Plaintiff's

13

trademarks in respect of the use of marks "Millennium Access Control System" and/or "Patented Access Control System"

59.  Defendants had no basis to claim, assert or implicate that they developed, owned or participated in the development of the "Patented Access Control System", or the Products, and any statement which varied from this reality was intentionally false and made to confuse and deceive Plaintiff's existing and prospective customers.

60.  In addition, in numerous instances Defendants made unauthorized and infelicitous installations of the PACS in one or more jails or institutions, which was neither authorized by the Sales Representative Agreement, or by Plaintiff, which, in conjunction with the foregoing facts, further impaired and damaged the reputation of Plaintiff in the eyes and minds of the universe of customers for the PACS, so as to create the impression that Plaintiff was incompetent, sloppy or careless in the installations of its Products.

61.  Upon information and belief, Defendants purchased certain constituent elements of the Products, and installed those elements in units of the Produce in the place(s) of business of one or more customers, without the knowledge or consent of Plaintiff, knowing that this was prohibited, or not authorized or sanctioned by the terms and conditions of the Sales Representative Agreement.

62.  In addition, upon information and belief, without the knowledge or consent of Plaintiff, and in violation of the Sales Representative Agreement, Defendants On The Gate and Reisender, contracted to purchase and purchased parts comprising the Product from third party sources, and assembled those constituent elements so as to comprise an unauthorized and illegitimate copy of the Product; and thereby made sales of unauthentic copies of the Product to

one or more customers, without accounting to Plaintiff for such sales and by falsely representing

that such products were authorized and the products of Defendants, but not Plaintiff.

63.     On October 21 , 2015 Plaintiff's counsel Christopher G. Trainor, Esq. of the law

firm of Carter, DeLuca, Farrell & Schmidt, LLP, as the agent and representative of Plaintiff,

notified Reisender, as the CEO of On The Gate, that Plaintiff had terminated the Sales

Representative Agreement, in accordance with the "Notice" provisions of the Agreement,

including pursuant to Paragraph "12(a)" of the Agreement (the failure to sell a minimum of 200

full units of the Product within a 365 day period), and by virtue of a coterie of other

misrepresentations and violations of that Agreement, including the violation of paragraph 2.

64.     As a result, an array of provisions under the Sales Representative Agreement were

activated, including those requiring the return of all of Plaintiff's Confidential Information, and

other materials, and the cessation of any further promotion by Defendants of the PACS, directly

or indirectly. (A copy of the Termination Notice is annexed as Exhibit "H" hereto)

## COUNT ONE
(False Advertising in violation of Section 43(a) of the Lanham Act—15 U.S.C. 1125(a))
(Against Defendants, On the Gate, and Reisender)

65.     Plaintiff adopts and incorporates each allegation set forth in the paragraphs "1"

through "64" of its Complaint, as if more fully set forth herein.

66.     The Defendants, and persons acting in concert with Defendants have disseminated

and/or caused others to disseminate, false and misleading statements concerning Plaintiff, and its

Trademarks and tradenames, into interstate commerce in violation of Section 4(a) of the Lanham

Act.

67.     The offending brochures and videos and other statements made by each of

Defendants On The Gate and Reisender, individually and collectively, constitute false and

deceptive advertising disseminated and intended to be disseminated into interstate commerce, and constitute false and deceptive advertising that misled, and/or is likely to mislead existing and prospective consumers of the PACS about the nature, characteristics, quality and warranties regarding Plaintiff's PACS, and in respect to the derivation and source of origin of the PACS.

68.    These statements directly targeted the PACS, and were intended to destroy and contradict the true facts concerning Plaintiff's affiliation, creation and industry, and its reputation, goodwill, and market position as related to the PACS.

69.    The Defendants have made and continue to willfully, knowingly and intentionally make, issue and cause to be made false descriptions, statements and representations in advertising and promotions and other communications both personally and in instrumentalities in interstate commerce, and unless immediately enjoined by this Court, will continue to deceive, mislead, and confuse customers for the PACS into believing that the PACS was created by the research, technology and industry of Defendants; so that notwithstanding Plaintiff's Termination of the Sales Representation Agreement as set forth herein, numerous of Plaintiff's existing and prospective customers will misperceive that the PACS were the patented products of Defendants, and not Plaintiff; and/or they will gain the incorrect notion that the PACS are accompanied by a "lifetime guarantee"—which may, or is likely to induce such customers to refuse to purchase PACS from Plaintiff, unless it provides a guarantee exponentially greater than the guarantee currently and historically offered by Plaintiff. Accordingly, it is necessary that any such injunctive relief require Defendants to immediately take down and discontinue its website and all other and similar means and instances of false disseminations; and to replace the false statements currently being made with a statement and/or pronouncement of equal ambit and scope, and in all respects reasonably satisfactory to Plaintiff, confirming/admitting that the PACS at all times were and are

16

the Patented Products of Plaintiff, and not Defendants, that the Defendants had nothing to do with the creation of the PACS; and that Defendants have been violating Plaintiff's Trademarks and other intellectual property and rights, but have been ordered to cease and desist from any continuing sales of the Products; and have been ordered to return all model, pictures, diagrams and whole or partial Units of the Product to Plaintiff immediately; and to cease and desist from claiming any present or future affiliation with Plaintiff.

70.     By way of amplification, the aforesaid acts by Defendants and others working in concert, are likely to cause the class of potential consumers for the PACS to believe that the sale of the Products was the sale of products manufactured by Defendants, and that this false designation or derivation of origin was authorized, sponsored and/or approved by Plaintiff, and the Products, including, upon information and belief, as retrofitted by elements compiled by Defendants, without Plaintiff's knowledge, were subject to the same quality control and regulation required by Plaintiff, although those implied and actual statements and representations are and were not true. As a result of the foregoing, these circumstances also injure Plaintiff in respect of any sales by Plaintiff, directly, or by or through the facilities of another replacement or substitute sales representative, which Plaintiff may or will now appoint from and after the Termination of Defendant, On The Gate as a Representative of Plaintiff under the Sales Representation Agreement.

71.     The aforesaid manufacture, distribution and sale of Products bearing the name, trademarks and/or likeness of Defendant, On The Gate, constitutes a false designation of the source and origin of such goods and falsely describes and represents such Products as being the result of the ingenuity and industry of Defendants, not Plaintiff.

72.     Moreover, Defendants' website, accessible via Internet search engine facilities, to the extent it encompasses pictures, and other depictions or demonstrations or illustrations of or concerning the PACS, and to the extent it prominently heralds Plaintiff's "Patented Access Control System" as belonging to, or emanating from Defendants, causes confusion in the marketplace, including the notion that Defendants' goods and services are affiliated with or otherwise approved or 'sponsored' by Plaintiff;  causes Plaintiff's Trademarks to be diluted by losing their distinctive quality of being associated solely with Plaintiff; allows Defendants to financially benefit from and to trade on the goodwill and reputation of Plaintiff, without incurring an expense similar to that incurred by Plaintiff in building up its brand name; and causes Plaintiff to lose, in part, control over the commercial use of its own name and marks by placing such control in the hands of Defendants.

73.     The use by Defendants of Plaintiffs unregistered Trademarks "Millennium Patented Access Control System" "Access Control System" and/or Patented Access Control System", or other similar names or marks, also constitutes an attempt to palm off and appropriate to Defendants Plaintiff's exclusive rights therein.

74.     In the alternative, Plaintiff's trademarks have gained a "secondary significance and meaning", association and affiliation among the existing and prospective consumers for the PACS; or no such showing is necessary or need be made by reason of the protection of, and association with the Products and Plaintiff, including by reason of the issuance of the Patents.

75.     Upon information and belief, Defendants and others working in concert with Defendants have and will  continue to be engaged in such unauthorized activities in the state of New York, and in interstate commerce.

76.     By reason of the foregoing, Plaintiff hereby asserts a claim against Defendants for injunctive and monetary relief pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), with regards to the false designation of origin and false descriptions and representations in commerce of Defendants' Unauthorized Merchandise.

77.     As a direct and proximate cause of Defendants unlawful acts, Plaintiff has suffered, and is suffering, and will continue to suffer damage to its business, reputation and goodwill, including as related to its Trademarks, and the loss of sales and profits which would be derived but for Defendant's acts.

78.     Defendant's acts, as described herein, are, and unless enjoined, will continue to be, in violation of Section 43(a) of the Lanham Act.

79.     Defendants have willfully and intentionally acted in bad faith and willfully engaged in false advertising with the intent to injure Plaintiff and to deceive the consuming public.  Thus, in addition to the injunctive relief requested herein, Plaintiff is entitled to costs and attorney's fees pursuant to 25 U.S.C. § 1117(a).

80.     Plaintiff has no adequate remedy at law and will suffer irreparable harm and damage as a result of the aforesaid acts, in an amount not presently capable of any precise calculation.

<u>**COUNT TWO**</u>
(Preliminary and Permanent Injunctive Relief)
<u>(Against Defendant, On The Gate)</u>

81.     Plaintiff adopts and incorporates each allegation set forth in the paragraphs "1" through "64" and "66" through "80" of its Complaint, as if more fully set forth herein.

82.   Based on the foregoing, Plaintiff requests that the Court enter preliminary injunctive relief until a full trial on the merits can be held, at which time Plaintiff requests that the Court enter permanent injunctive relief.

83.   Plaintiff is without adequate remedy at law for the protection of its intangible rights and interests, but not limited to its business reputation and goodwill.  Damage to business reputation and business relationships are precisely the types of harm that are generally considered irreparable because damage is difficult, if not impossible to determine.

84.   Plaintiff has suffered and will continue to suffer immediate and irreparable harm, injury and loss unless this Court issues a preliminary injunction enjoining and restraining the defendants from publishing any advertising materials that falsely represent or suggest that the PACS were created and/or patented by Defendants.

85.   Plaintiff has a substantial likelihood of success on the ultimate merits of the relief requested in this Complaint, including as evidenced by the patently false advertising by Defendants, reflected by the documentary evidence presented by Exhibits "E", "F" and "G" in comparison to the Patents and the prior use of Plaintiff's Trademarks (see, e.g., Exhibit "D"), and the uniqueness evidenced by the issuance of the Patents.

86.   The Defendants will not suffer any hardship by being immediately enjoined from dissemination of its false advertising materials, since Plaintiff terminated the Sales Representative Agreement by reason of Defendant, On The Gate's, failure to satisfy the requirement that it sell a minimum of 200 units a 365 day period and for other reasons, including the breach of Section "2" of that Agreement. (See Exhibit "H")

87.   A preliminary injunction further serves the public interest in protecting against false advertising and unfair competition.

88.     Pursuant to Fed. R. Civ. P. 65 (c), Plaintiff will deposit with the Court security in an amount, if any, as the Court may determine is proper to the extent that the Defendants demonstrate that they were wrongfully enjoined during the period of the preliminary injunction.

89.     Based on the foregoing, Plaintiff requests that the Court enter preliminary injunctive relief precluding Defendants from using the trademark "Patented Access Control System", or any derivation thereof, and that it be enjoined from falsely advertising the PACS as having been developed by Defendants in any way, or otherwise stating or implicating any propriety interest in or with respect to the "Patented Access Control System", until a full trial can be held, at which time Plaintiff requests that the Court enter permanent injunctive relief , including in a form which requires that Defendants notify all persons and entities at any time previously solicited by any false or deceptive advertising that falsely depicts source of origin and other false aspects of Defendants' sales of the Product.

### COUNT THREE
(Breach of Contract)
(Against Defendants, On The Gate and Reisender)

90.     Plaintiff adopts and incorporates each allegation set forth in the paragraphs "1" through "64", "66" through "80" and "82" through "89" of its Complaint, as if more fully set forth herein.

91.     Defendants failed to timely or otherwise remit payment to Plaintiff for goods sold and delivered, as represented by three invoices, each dated July 18, 2015 (copies of which are annexed hereto collectively as Exhibit "I") which were due to be paid no later than August 17, 2015.

92.     On October 21, 2015, in accordance with the notice provisions and paragraph "12" of the Sales Representative Agreement, Plaintiff's counsel Christopher G. Trainor, Esq.

of the firm of Carter, DeLuca, Farrell & Schmidt, LLP notified Defendant, On The Gate, of its breach and default under that Agreement, for, among other reasons, the following:

(a)     On The Gate violated the terms and conditions of the ¶"2" of the Agreement, including by using all or a part of the Confidential Information to promote the Products as those of Defendant, which did not promote the interests or Products of Plaintiff;

(b)     On The Gate failed to use its "best efforts" to sell the Products" in the Exclusive and Non-Exclusive Territories, including by failing to expend sufficient moneys and to apply sufficient resources to accomplish the purposes of the Agreement;

(c)     On The Gate failed to act in accordance with the requirements of ¶"8" Of the Agreement, in that said Defendant failed to:

(1)     devote such time, energy, and skill on a regular and consistent basis as was necessary to sell and promote the sale of the Company's Products in the Territory during the Term of the Agreement;

(2)     be responsible for finalizing agreements and purchase orders with each customer that purchases the Products;

(3)     accurately represent and state Company production abilities, policies and capabilities to all potential and present customers;

(4)     promptly inform the Company of all sales and orders and expected time frames for delivery of Company Products resulting from such sales and orders;

(5)     inform the Company if the Representative intends to advertise the Products outside of the Territory or solicit sales from customers located outside of the Territory;

(6)     maintain contact with the Company via telephone, e-mail, or other agreed on means of communication with reasonable frequency to discuss sales activity within the Territory;

(7)     disclose problems concerning customers (including Existing Customers) to the Company;

(8)     perform such other sales-related services with respect to the customers

22

as the Company or Representative may reasonably require; and to

   (9)   endeavor to sell no less than 200 units per year with the beginning of the first selling year starting no earlier than May 2012; and

   (c)   Representative failed to pay the invoices collected at Exhibit "I" hereto within sixty (60) days after demand.

93.   On the foregoing basis, and pursuant to the provisions of ¶"12", Plaintiff, through its counsel, terminated the Agreement for the following reasons, among others: (i) Representative failed "to sell 200 units or more in any 365 day time period, beginning January 1, 2013 during the Term"; (ii) Representative breached paragraph "2" of the Agreement; (iii) Representative did not pay its outstanding invoices, within sixty days after demand; and because (iv) Representative impaired and diminished the value of Plaintiff trademarks and tradenames by its conduct and unlawful activities as aforesaid. (See Exhibit "H" hereto)

94.   By reason of the foregoing, Plaintiff prays for damages in the sum of $1 million, or such greater amount as this Court may determine, plus legal fees and costs pursuant to paragraph "20" of the Agreement.

**COUNT FOUR**
(For Unfair and Deceptive Trade Practices In Violation Of
New York General Business Law § 349 and 350)
(Against Defendants, On The Gate, and Reisender)

95.   Plaintiff adopts and incorporates each allegation set forth in the paragraphs "1" through "64", "66" through "80", "82" through "89" and "91 through "94" of its Complaint, as if more fully set forth herein.

96.   Although prior to its termination, Defendant, On The Gate, was appointed as a Sales Representative, the Agreement also reflected that Plaintiff and On The Gate

were also, in various circumstances, direct competitors in the "New York Area" and in

Pennsylvania.

97.     New York General Business Law  ("GBL") provides that:

(a)     Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful…; and

(h)     In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

98.     By reason of the foregoing Plaintiff is entitled to $1 million, or such

greater amount of damages as this Court may determine, plus $1 million in punitive

damages, and its legal fees incurring in prosecuting this Action; and Plaintiff is entitled

to an injunction as aforesaid.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Millennium Access Control Technology, Inc., seeks relief against Defendants and each of them as follows:

(i)  **On Count One**:  $1 million, or such greater amount of damages as this Court may determine, plus $1 million in punitive damages, and its legal fees incurred in prosecuting this Action;

(ii)  **On Count Two**:  That Defendants, their agents, servants, employees, officers, attorneys, successors and assigns, and all persons acting in concert with them, be permanently enjoined and in all respects precluded from using the trademark "Patented Access Control System", or any derivation thereof, or any colorable variation or imitation thereof; and that all such persons be enjoined from falsely advertising, directly or indirectly, the Plaintiff's Patented Access Control System as having been developed by Defendants in any way, or otherwise stating or implicating any propriety interest in or with respect to the "Patented Access Control System": including injunctive relief in a form which requires that Defendants notify all persons and entities at any time previously solicited regarding Plaintiff's Products, and advising them that such advertisements were false, deceptive and misleading, and advising all such person or entities that Plaintiff obtained four United States Patents regarding the "Patented Access Control System", and that the name and mark "Patented Access Control System" and any derivation thereof is the sole propriety property of Plaintiff and not Defendants, and that Defendants have previously falsely advertised and depicted the source of origin and other aspects of Plaintiff's Product as belonging to Defendant, rather than Plaintiff;

(iii)  **On Count Three**:  $1 million, or such greater amount of damages as this Court may determine, together with Plaintiff's legal fee incurred in prosecuting this Action;

(iv)  **On Count Four**:  $1 million, or such greater amount of damages as this Court may determine, plus $1 million in punitive damages, and its legal fees incurred in prosecuting this Action; and Plaintiff is entitled to an injunction as aforesaid.

(v)  **As to All Claims For Relief**, that this Court order the United States Marshal, the local and state police or sheriff, off duty officers of the same, authorized agents of Plaintiff, and/or any persons acting under their supervision to seize and impound any and all unauthorized remaining Product, or any counterfeit versions thereof, in the hands or possession of Defendants, directly or indirectly, and return all such "Products" to Plaintiff so that Defendants shall not have any opportunity to sell or attempt to sell, distribute or hold for sale any such "Products; or alternatively, Defendants deliver up for destruction any and all counterfeit versions of the Product; and

(vi)  For such other and different relief as to this Court may seem just and proper, together with the costs and disbursements of this action.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial with respect to all Counts of this complaint triable before a jury as a matter of right.

Dated: October 22, 2015

**JEFFREY L. ROSENBERG
& ASSOCIATES, LLC**

**s/** Jeffrey L. Rosenberg

By:_____

Jeffrey L. Rosenberg
46 Morgan Drive
Old Westbury, New York 11568
Tel:    (516) 626-1325
Fax:    (516) 626-0355
e-mail  j.rosenberg@jlrllc.com
Attorneys for Plaintiff,
Millennium Access Control
Technology, Inc.